UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 05-297 |
| CHRIS WALKER | SECTION: "J"(3) |

**ORDER AND REASONS**

Before the Court are Petitioner **Chris Walker's Motion and
Amended Motion to Vacate Sentence under § 2255 (Rec. Docs. 284
and 290)** and the **Government's Opposition (Rec. Doc. 292)**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

In November of 2005, Petitioner Chris Walker and his
girlfriend, Cheisa Brumfield, were indicted for violations of the
Federal Controlled Substances Act and Federal Gun Control Act.
Petitioner pled not guilty at his arraignment. At this stage of
the proceeding, Attorney Duncan Kemp, III represented him. Prior
to trial, Petitioner's counsel filed multiple pretrial
motions–including a motion to divulge plea agreements, motion for
bill of particulars, motion for disclosure of informants, and
motion to suppress evidence.

In February of 2006, the Federal Grand Jury returned a
superceding indictment adding a third co-defendant, Johnnie Sims,
as well as other counts to the indictment. In the superceding
indictment, Petitioner and Brumfield were charged with conspiracy
to distribute and possess with the intent to distribute 50 grams

or more of cocaine base and 500 grams or more of cocaine

hydrochloride and a quantity of marijuana. Petitioner and

Brumfield were also charged with possession with the intent to

distribute 50 grams or more of crack and 500 grams or more of

cocaine hydrochloride and a quantity of marijuana. Petitioner was

also charged as a felon in possession of a firearm, and

Petitioner and Sims were charged were conspiracy to murder a

federal drug enforcement agent.

Also in February of 2006, at the request of Petitioner, the

Magistrate Judge appointed the Federal Public Defender's Office

to represent him. His new counsel, Vincent Miceli, Jr., enrolled

and filed several motions-one to adopt all motions filed by

previous counsel, another to sever Count 4 (conspiracy to murder

a federal drug enforcement agent), and another to sever

Petitioner Walker's case.

In April of 2006, the Magistrate issued an order that

Petitioner's motion for disclosure of plea agreements, motion for

bill of particulars, and motion for discovery and inspection were

all satisfied. Petitioner indicated he was uninterested in

pursuing his motion to sever parties, and the Court accordingly

dismissed it. Petitioner also withdrew his motion for a pretrial

hearing to determine the admissibility of statements.

Also in April of 2006, the Court denied Petitioner's motion to sever Count 4 and motion to suppress evidence. Petitioner withdrew his motion for disclosure of informants.

In September of 2006, the Federal Grand Jury returned a second superceding indictment, which charged Walker with solicitation to murder a federal witness. Just prior to the second superceding indictment being returned, Petitioner again changed counsel, with Attorney Robert Fleming, Jr. appointed to represent him. In November of 2006, the Court granted Petitioner's motion to hire an investigator.

In January of 2007, the Government filled a two-count bill of information, alleging that Petitioner had two prior state felony drug convictions-Count 1 of which was a plea of no contest.

In February of 2007, Petitioner pled guilty to Counts 1, 2, 3, 4 and 7 of the second superceding indictment. During his re-arraignment, Petitioner swore that the evidence in the factual basis was correct, including the felony conviction alleged in Count 2 of the bill of information.

Prior to sentencing, Petitioner and the Government filed briefs concerning the use of a prior nolo contendre plea, as outlined in Count 1 of the bill of information, to enhance Petitioner's sentence under 21 U.S.C. § 851. During the August 8,

2007 sentencing hearing, the Court adopted the findings and

calculations of the pre-sentence report. Including a three-point

reduction for acceptance of responsibility, Petitioner's offense

level was 42 and his criminal history category was VI. Under the

advisory guidelines, Petitioner's range for imprisonment was 360

months to life. However, because of the bill of information,

Petitioner was subject to a mandatory term of life imprisonment.

The Court concluded that the prior nolo contendere plea was

a valid conviction for purposes of enhancement and accordingly

found that the mandatory life sentence was proper. During the

sentencing, the Court addressed the Petitioner, "[E]ven if I had

agreed with your lawyer's arguments and I would agree that your

guidelines are only 360 months to life, I would impose a life

sentence under the circumstances of this case anyway." (See

transcript at 21-22.)

On August 15, 2007, Petitioner filed a timely notice of

appeal, and the Fifth Circuit affirmed this conviction and life

sentence on October 20, 2008.

The Petitioner files the instant habeas action, arguing that

he was denied effective assistance of counsel.

### THE PARTIES ARGUMENTS

Petitioner makes multiple arguments for ineffective

assistance of counsel. He argues that his counsel failed to

properly advise him of the fact that Co-Defendant Johnnie Sims

was not going to testify against him. According to Petitioner,

one of the chief reasons he entered a guilty plea was because his

attorney told him that Johnnie Sims was "ready to cut a deal and

tell everything." Petitioner claims that Sims was never

interviewed by his attorney and that Sims did not consider

testifying against the Petitioner; Petitioner sent a sworn

declaration from Sims to this effect (Rec. Doc. 297). He argues

that if he knew Sims would not act as a cooperating witness and

instead would have testified that Petitioner had removed himself

from the plot to solicit the murder of the government agent and

federal witness, Petitioner would not have pled guilty.

Additionally, Petitioner argues that his attorney failed to

advise him of the possible sentences that he faced. Specifically,

Petitioner explains that his attorney told him that the only way

to avoid a life sentence was to enter a guilty plea. Petitioner

emphasizes that he received a mandatory life sentence as a result

of his guilty plea–a sentence not one day less than he would have

received if he had gone to trial. Under Petitioner's perspective,

the fact that he did not receive a lesser sentence by pleading is

evidence that he would not have pled guilty to all of the counts

had he fully understood the sentence he would have received.

Petitioner avers that he pled guilty because his counsel

mistakenly believed that his prior plea of nolo contendere would not constitute a prior offense; he cites to the sentencing transcript to demonstrate that even at the time of sentencing, his attorney was confused about this issue.

Petitioner argues that the Court must consider the cumulative effect of his counsel's errors when gauging whether Petitioner has sufficiently pled the prejudice component of Strickland v. Washington, 466 U.S. 668 (1984). Petitioner avers that his counsel committed numerous missteps in failing to properly investigate, research, and argue multiple viable defenses. For example, Petitioner explains that once it was determined he would not be released on bail, he insisted on going to trial as soon as possible. However, without his knowledge, his attorneys acquiesced in continuances (exceeding seventy days) in contravention of his right to a speedy trial.

Petitioner also contends that his attorney should have objected to the inclusion of Probation Officer David L. Arena's subjective and prejudicial opinions in his Pre-Sentence Report. Petitioner has hired an investigator to challenge the alleged consent that Brumfield gave to officials to search his home; he believes that the investigation will show that Brumfield did not consent to a search.

If his counsel's strategy was to encourage a plea deal,
Petitioner argues that his counsel should have recommended
pleading earlier–before the Government filed a notice under §
851. He argues that counsel's delay constitutes a constructive
abandonment by counsel.

Petitioner also explains that his counsel repeatedly assured
him that his sentence would not be enhanced on the basis of his
prior offenses, that his counsel failed to challenge and inform
Petitioner of a Rule 11 violation that occurred, failed to inform
him about a meritorious suppression claim, failed to object to
the erroneous application of the six-level enhancement under
3A1.2(b), failed to raise on appeal the disparity between crack
cocaine and powder cocaine sentences, and failed to argue that a
life sentence was unreasonable. He also claims that newly
discovered evidence conclusively proves that he was not guilty of
all of the crimes to which he pled guilty.

The United States responds by insisting first, that
Petitioner's plea was knowing and voluntary and second, that
Petitioner has not shown that his counsel provided ineffective
assistance of counsel or that he was prejudiced by his attorney's
actions. As to its first argument, the United States avers that
Petitioner knew the potential consequences of his plea. The
United States points to the sentencing transcript to demonstrate

7

that the Court questioned the Petitioner in detail to determine

whether or not he was voluntarily pleading guilty. In particular,

the Court informed Petitioner that he faced a maximum of life in

prison and advised him that any prior discussions about

sentencing were "merely rough estimates."

According to the United States, Petitioner's plea colloquy

"carries a strong presumption of verity." United States v. Abreo,

30 F.3d 29, 31 (5th Cir. 1994). The United States also cites

Daniel v. Cockrell, 283 F.3d 697, 703 (5th Cir. 2002) for the

proposition that Petitioner's "mere subjective understanding that

he would receive a lesser sentence" does not render the plea

involuntary.

Secondly, the United States argues that Petitioner has not

shown that he suffered ineffective assistance of counsel. The

United States responds that three months prior to Petitioner's

re-arraignment, Petitioner's co-defendant, Johnnie Sims, signed a

written plea agreement that required Sims to testify truthfully

at any trial. Accordingly, Petitioner's counsel reasonably

believed that Sims would testify against Petitioner at trial.

The United States counters that it did not offer Petitioner

a Rule 11(c)(1)(C) plea agreement, nor did it ever contemplate

entering into one. Additionally, the Government explains that

Petitioner could not have avoided a §851 enhancement by pleading

guilty earlier; the Government had always intended on filing for
an enhancement and would have filed it earlier if Petitioner had
pled earlier. Because there was no plea agreement, the Government
also avers that Petitioner's counsel was not ineffective for
failing to enter into a conditional plea which would have allowed
Petitioner to appeal a suppression motion.

Furthermore, the Government contends that Petitioner's
attorney was not ineffective for failing to object to the six-
level enhancement under 3A1.2(b), which applies in situations
when the intended victim is an "official victim." In Petitioner's
case, the intended victim of his conspiracy to kill a federal
agent was Special Agent Chat Scott of the Drug Enforcement
Administration. Accordingly, the United States explains that an
objection to this enhancement would have been frivolous.
Additionally, the Government explains that an argument by
Petitioner's counsel as to the disparity between crack cocaine
and powder cocaine sentences would have been to no avail—as
Petitioner's sentencing guideline range would have been the same
if it was calculated solely on powder cocaine. The Government
also avers that his attorney was not ineffective for failing to
object to the unreasonableness of a life sentence, as the Court
found that a life sentence was reasonable.

With respect to Petitioner's contention that he has newly discovered evidence, the Government is skeptical. Petitioner claims he can show that his co-defendant Cheisa Brumfield did not consent to a search. However, the Government explains that Cheisa Brumfield signed a factual basis, which stated clearly that Brumfield gave consent to search her residence, as well as an actual consent form at the time of the search.

The Government argues that Petitioner's claim that his right to a speedy trial was violated has no merit. According to the Government, Petitioner only makes a general allegation but fails to demonstrate why he believes this to be. The Government notes that the Court granted each of the continuances in the interests of justice.

### DISCUSSION

The burden of proof in habeas proceedings alleging ineffective assistance of counsel is on Petitioner. United States v. Chavez, 193 F.3d 375, 378 (5th Cir.1999) (citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir.1994)). Specifically, Petitioner must prove two separate components. First, Petitioner must show that counsel's performance was deficient in that the errors made by counsel were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687

(1984). Second, Petitioner must show that the deficient performance prejudiced the defense, the errors made by counsel being "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

In determining whether counsel was deficient, this Court must apply a highly deferential standard to the examination of counsel's performance. Id. at 689. The analysis starts with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted). When deciding an actual ineffectiveness claim, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.

To show prejudice resulting from counsel's deficient performance, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

However, because both the deficiency of performance and the prejudice components are necessary to a claim of ineffective

11

assistance of counsel, there is no need for the Court to address both components if a finding is made that the petitioner has made an insufficient showing on one. Id. at 697. Further, the Court need not determine whether counsel's performance was deficient before examining whether the defendant suffered prejudice. Id. In fact, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

With respect to evaluating whether a guilty plea is valid, the test is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985). To establish the Strickland prejudice prong in guilty plea cases, Petitioner "must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

With this in mind, this Court proceeds to evaluate Petitioner's arguments that he was denied effective assistance of counsel and concludes that Petitioner's arguments fail. Furthermore, the Court determines that an evidentiary hearing is unnecessary.

Petitioner argues that he would not have pled guilty but for his counsel's advice that the only way to avoid a life sentence

was to plead guilty. Petitioner avers that his counsel's advice stemmed from his mistaken belief about the effect of his prior nolo contendere plea in state court. The Court concludes that his counsel was not deficient in arguing that Petitioner's prior nolo contendere plea should not be considered a prior offense for purposes of a §851 enhancement. This issue was an unresolved legal question-indeed, the Government cited case law from other circuits to support its position that a prior nolo contendere plea should be considered a prior offense.

The Court also concludes that Petitioner's argument that his counsel advised him that the only way to avoid a life sentence was to plead guilty lacks "sufficient indicia of the likely merit of his allegations." United States v. Perez, 227 Fed. Appx. 357, 360 (5th Cir. 2007). A comparison to Perez is instructive. There, the Fifth Circuit reversed the district court's denial of an evidentiary hearing and remanded the habeas case for a hearing about whether the defendant's attorney had promised him a two-year sentence. The Fifth Circuit explained that "[i]t is settled law that 'a guilty plea may be invalid if induced by defense counsel's unkept promises.'" Id. at 359 (internal citations omitted). Although Perez had testified under oath at his sentencing that no one had promised him anything in exchange for a plea-testimony that is given great weight, Perez could "seek

habeas relief on the basis of alleged promises, though inconsistent with representations [he] made in open court when entering [his] guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." Id. at 360 (citation omitted). Because the defendant had included two affidavits, one from his wife and one from his wife's sister-in-law, the defendant's petition warranted an evidentiary hearing.

In the instant case, Petitioner's plea colloquy during his re-arraignment contradicts the argument he advances in his habeas petition. Petitioner answered "no" when the Court asked whether anyone made any promises to him in exchange for his plea. Moreover, the Court said to Petitioner: "Should the Court find at sentencing that you have two valid prior felony convictions, as has been alleged by the government in a superceding bill of information filed on January 21, 2007, then for each of Counts 1 and 2 the penalty would become a mandatory minimum sentence of life in prison; a minimum of 10 years supervised release; a fine of $8 million; and a $100 special assessment. Do you understand the maximum possible penalties for Counts 1 and 2?" Petitioner responded: "Yes, sir." Unlike in the Perez case, Petitioner has not offered any corroborating evidence, like Perez's affidavits,

14

to support his argument that his counsel advised him that the

only way to avoid a life sentence was to plead guilty.

Accordingly, the Court concludes that this argument fails and

that Petitioner is not entitled to an evidentiary hearing.

Petitioner claims that he would not have pled guilty if he

would have known that his co-defendant Sims would not have

testified against him. Petitioner has not demonstrated that his

counsel's assistance was ineffective because the record shows

that his counsel reasonably concluded Sims would testify against

Petitioner–Sims had signed a plea agreement that directly

contradicts Petitioner's current claim. Although Petitioner

included a sworn affidavit from Sims that he would not have

testified against Petitioner, the Court concludes this affidavit

does not overcome the "strong presumption that counsel's conduct

falls within the wide range of reasonable professional

assistance." Strickland, 466 U.S. at 689.

The Court concludes that Petitioner's attorney was not

deficient for failing to object to the subjective opinions in his

Pre-Sentence Report nor has Petitioner shown that but for his

counsel's lack of objection, he would not have pled guilty.

Petitioner has not demonstrated the likelihood that any

newly discovered evidence pertaining to the search would

exonerate him of any of the crimes to which he pled. Indeed,

15

Petitioner has not even enumerated for the Court what the expected evidence is. As the Government points out, Petitioner's girlfriend gave written consent to search her home at the time of the search, and she also signed a factual basis to this effect. The Court concludes that this argument has no merit.

Petitioner has not made a colorable claim in arguing that his counsel should have encouraged him to plead earlier to avoid an § 851 enhancement. The Court concludes that his counsel was not deficient in failing to encourage him to plead guilty earlier, nor is there any showing that Petitioner could have avoided the enhancement by pleading sooner.

The Court concludes that Petitioner's counsel was not deficient in failing to object to the "official victim" 3A1.2(b) enhancement–the Government points out, and the Court agrees, that an objection would have been frivolous because the intended victim was clearly a government officer. Additionally, the Court concludes that his counsel was not deficient in requesting continuances to ensure that the Petitioner received adequate representation. Each continuance was granted in the interest of justice. Petitioner's counsel was not deficient in failing to object to a Rule 11 violation, nor can Petitioner show that the Government would have offered him a Rule 11 plea. Petitioner's arguments regarding the evidence-suppression issue also fail–not

16

only does Petitioner fail to explain what the suppression issue is, but he also fails to explain how his counsel's alleged failures prejudiced him in any way.

The Court further determines that Petitioner cannot show prejudice with respect to his remaining arguments: that his counsel failed to dispute the crack cocaine and powder cocaine sentence disparity and that his counsel failed to object to the unreasonableness of a life sentence.

**IT IS ORDERED** that **Chris Walker's Motion and Amended Motion to Vacate Sentence under § 2255 (Rec. Docs. 284 and 290)** are hereby **DENIED.**

New Orleans, Louisiana, this 9th day of May, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT COURT